UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PERMANENT GENERAL
ASSURANCE CORPORATION                                              PLAINTIFF

v.                         No. 2:18-CV-02169

BRANDON POWELL, et al.                                            DEFENDANTS

## OPINION AND ORDER

Before the Court is Separate Defendants Mina Anderle and C.A.'s (the "Anderle Defendants"), motion for summary judgment (Doc. 32). The Anderle Defendants filed a brief (Doc. 33) and statement of facts (Doc. 34) in support. Plaintiff Permanent General Assurance Corporation ("PGAC"), filed a cross motion for summary judgment and response (Doc. 35), as well as a brief (Doc. 36) and statement of facts (Doc. 37) in support. PGAC also filed a response (Doc. 38) to the Anderle Defendants' statement of facts (Doc. 34).

PGAC separately filed a motion for default judgment against Separate Defendant Jessica McClure (Doc. 61) and a brief in support (Doc. 62).[1] The Anderle Defendants filed a response in opposition to the motion for default judgment (Doc. 63). PGAC's cross motion for summary judgment will be granted and the Anderle Defendants' motion for summary judgment will be denied.

**I.    Background**

Plaintiff PGAC is a corporation authorized to write automobile liability insurance in the

---

[1] The Clerk entered the default of Separate Defendants Dakota Britt and Brandon Powell on July 9, 2019 (Doc. 44). It is immaterial whether PGAC's decision to omit Britt and Powell from the motion for default judgment was a matter of oversight or intentional. Because any decision with respect to the motion for default judgment against Separate Defendant McClure would pertain equally to Britt and Powell, the Court will construe the motion as having been made against those defendants, as well.

State of Arkansas. (Doc. 18). PGAC issued an automobile insurance policy to Defendant Britt effective on July 11, 2017. (Doc. 34). The policy listed a 2003 Cadillac Deville ("vehicle"), owned by Britt, as an insured vehicle. Britt purchased the vehicle from McClure. The declaration page of the policy lists Britt as the only driver/household member. (Doc. 37-1, p. 2).

The portions of the policy relevant to this lawsuit read, with emphases in original:

Bolded terms used in this policy shall have the meaning shown in the **Policy Definitions** except when defined in the coverage part. (Doc. 37-1, p. 9).

"**Insured driver**" is a **person** specifically identified on the **declarations page** as an active driver under this policy. (Doc. 37-1, p. 13).

"**Named insured**" means the **person** or **persons** shown on the **declarations page** as the policyholder, or designated as "**Named Insured**." (Doc. 37-1, p. 13).

"**You**" and "**your**" mean:
    a. The **named insured**; and
    b. If **residing** in the same **household** as the **named insured**, his or her:
        (1) Spouse; or
        (2) Domestic partner . . . ." (Doc. 37-1, p. 14).

PART I – LIABILITY COVERAGE

**Insuring Agreement**

1. Subject to the limits of liability, if **you** buy Liability Coverage from **us** on this policy, **we will pay** compensatory damages, for which an **insured person** is legally liable to others because of:
    a. **Bodily injury**;
    b. **Property damage**;
that results from a **motor vehicle accident**. These damages include prejudgment interest on compensatory damages that may be awarded against an **insured person**.
2. When coverage under this Part I applies, we will also pay, in addition to **our** limit of liability, all settlement and defense costs **we** incur. As **we** decide is proper, **we** will (with a lawyer of **our** choice, to be paid by **us**):
    a. Investigate;
    b. Negotiated and settle; and/or
    c. Defend;
any claim or lawsuit brought against an **insured person** for **bodily injury** or **property damage**. **Our** duty to settle or defend ends when **we**:
    a. Pay **our** limit of liability for payment of a judgment or settlement; or
    b. Tender **our** limit of liability to a court with proper jurisdiction.

> **We** have no duty to settle or defend any claim that is not covered by this policy. (Doc. 37-1, p. 15).
>
> **"Insured person"**, in this Part I, means:
> 1. **You**, a **family member** or an **insured driver** for the ownership or **use** of a:
>      a. **Covered auto** covered by this Part I;
>      b. **Non-owned auto**; or
>      c. Trailer while being towed by a **covered auto** or a **non-owned auto**.
> However, **insured person** does not include a **family member**, or any other **person** who **resides** in **your household**, who has not been disclosed to **us**.
> 2. Any other **person** who is **using** a **covered auto** with **your** permission but only if:
>      a. Such **person** is not insured by any other **motor vehicle** liability policy, self-insurance or bond; and
>      b. The **use** is within the scope of that permission.
> However, if this policy is certified as proof of financial responsibility, then **insured person** shall include any other **person using** a **covered auto** with **your** permission if that **use** is within the scope of that permission.
> If there is **use** of a **covered auto** outside the scope of **your** permission by a **person** other than **you**, a **family member** or an **insured driver**, and a court with proper jurisdiction compels coverage under this policy to apply to that use of a **covered auto**, **our** coverage for that **person** shall be excess to any other coverage. (Doc. 37-1, p. 15).
>
> **Exclusions**
>
> **We** have no duty to defend and **we** do not provide this Part I – Liability Coverage for any **insured person** for: . . .
> 13. Operation of any **auto** by an **insured person** who:
>      a. Does not have a **driver's license**;
>      b. Has a **driver's license** that is suspended or revoked; or
>      c. Has a restricted **driver's license** and is **using** the vehicle outside the scope of that restriction.
> This does not apply to an **auto** being **operated** by any **insured driver**. (Doc. 37-1, pp. 15–16).

On August 31, 2017, Britt gave Powell permission to drive the vehicle. While driving the vehicle, Powell was involved in a collision with the Anderle Defendants. At the time of the collision, Powell did not have a driver's license or his own motor vehicle liability insurance. The Anderle Defendants filed suit in the Circuit Court of Polk County, Arkansas against Powell, Britt, and McClure seeking to recover for personal injuries arising out of the August 31, 2017 collision.

3

(Doc. 34).

PGAC filed this declaratory judgment action against all Defendants. (Doc. 18). PGAC seeks a determination that the policy does not require coverage or a defense obligation in the underlying state court lawsuit. The Anderle Defendants argue PGAC is required to defend the lawsuit because the policy is ambiguous and against public policy.

## II.     Legal Standard

After viewing the record in the light most favorable to the nonmoving party and granting all reasonable factual inferences in the nonmovant's favor, a motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Serv., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted). The same standard applies to cross-motions for summary judgment, with each party's motion reviewed in its own right and the parties "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

## III.    Analysis

A federal district court sitting in diversity applies its forum state's substantive law. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007). In

Arkansas, the duty to defend under an insurance policy arises when there is a possibility that the injury or damage may fall within the policy coverage. *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC.*, 411 S.W.3d 184, 190-91 (Ark. 2012). Generally, the "pleadings against the insured determine the insurer's duty to defend." *Id.* To determine if a duty to defend arises, the "language in the contract from which the purported duty arises" is examined. *Id.* "The provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'" *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (quoting *Horn v. Imperial Cas. & Indem. Co.*, 636 S.W.2d 302, 303 (Ark. 1982)). "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Id*. at 750 (quoting *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 470 (Ark. 1976)).

After it is determined that coverage exists, it must then be determined if exclusionary language within the policy eliminates the coverage. *See Castaneda v. Progressive Classic Ins. Co.*, 166 S.W.3d 556, 560-61 (Ark. 2004) (citing *Norris v. State Farm Fire & Cas. Co.*, 16 S.W. 3d 242 (Ark. 2000)). Exclusions must be expressed in clear and unambiguous language. *See id.* If language is unambiguous, the plain language of the policy will be used. *Id.* (citing *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165 (2001)). Language is ambiguous if "there is a doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696 (Ark. 2002). When language is ambiguous, the policy will be construed "liberally in favor of the insured and strictly against the insurer." *Castaneda*, 166 S.W.3d at 560-61.

Under the policy issued to Britt, PGAC will pay compensatory damages for bodily injury

5

or property damage resulting from a motor vehicle accident for which an insured person is legally liable. (Doc. 37-1, p. 15). PGAC will also defend "any claim or lawsuit brought against an insured person for bodily injury or property damage." (Doc. 37-1, p. 15). The policy contains an unlicensed driver exclusion. The unlicensed driver exclusion states PGAC does not have a duty to defend or provide liability coverage for "operation of any **auto** by an **insured person** who . . . does not have a **driver's license**." (Doc. 37-1, pp.15–16) (emphasis in original). The unlicensed driver exclusion does not apply to an "**auto** being operated by **any insured driver**." *Id.* (emphasis in original).

The Anderle Defendants argues the policy exclusions are ambiguous because the terms "insured driver" and "insured person" are essentially the same definition. These policy provisions are not ambiguous. "Insured person" is defined in the liability coverage section as "**You**, a **family member**, or an **insured driver**" or "any other person who is **using** a **covered auto** with **your** permission but only if such **person** is not insured by any other **motor vehicle** liability policy and the use is within the scope of that permission." *Id.* (emphasis in original). The policy definitions define "**you**" as "the **named insured**" and a spouse or domestic partner who is residing in the same household as the named insured. (Doc. 37-1, pp. 14–15) (emphasis in original). The policy defines "**named insured**" as the person shown on the declarations page. (Doc. 37-1, p. 13) (emphasis in original). "Insured driver" is defined in the policy definition section as a "person specifically identified on the **declarations page** as an active driver under the policy." (Doc. 37-1, p. 13) (emphasis in original).

The unlicensed driver exclusion applies when an **insured person** does not have a driver's license, but does not apply to an **insured driver**. Because the policy separately defines "insured driver" and "insured person" and keeps these distinctions separate, there is no uncertainty as to the

6

definitions and it is not susceptible to more than one reasonable interpretation.

In light of these unambiguous and clear policy provisions, there is no genuine dispute of material facts. Powell was driving Britt's insured vehicle at the time of the collision. Because Powell had Britt's permission and was not insured, Powell was an "insured person" under the policy. However, Powell was not an "insured driver" because he was not listed on the declarations page. Because Powell was driving without a license and was not an "insured driver," the policy's unlicensed driver exclusion applies.

As an alternative argument, the Anderle Defendants argue that the driver's license exclusion in the policy violates public policy because the policy does not satisfy the requirements found in Ark. Code Ann. § 27-19-713 and because the "initial permission rule" requires the policy to cover Powell's actions. Ark. Code Ann. § 27-19-713 specifies the coverage insurance policies are required to provide. The initial permission rule provides that if the named insured, or one with authority, gives permission to the person operating the vehicle at the time of accident, the operation is within scope of the permission. *See Ison v. S. Farm Bureau Cas. Co.*, 221 S.W.3d 373, 379 (Ark. App. 2006).

Ark. Code Ann. § 27-19-713 applies to policies issued and used as certified proof of financial loss. *See Smith v. Shelter Mut. Ins. Co.*, 937 S.W.2d 180, 182 (Ark. 1997) (holding the statute is not applicable to insurance policies not used as proof of financial responsibility). Because the policy here is not used as certified proof of financial responsibility, the policy does not have to satisfy Ark. Code Ann. § 27-19-713. *See Branscumb v. Freeman*, 200 S.W.3d 411, 414 (Ark. 2004) (stating Ark. Code Ann. § 27-19-713 only applies to those persons "convicted of or forfeited bail for certain offenses under motor vehicle laws or who have failed to pay judgments upon causes of action arising out of ownership, maintenance, or use of vehicles of a type subject to registration

under the laws of this state" (citing Ark. Code Ann. § 27-19-702)).

Application of the initial permission rule does not foreclose coverage exclusions. The Arkansas Supreme Court has found that exclusionary clauses in general are enforceable and not against public policy. *See Allstate Ins. Co. v. Garrett*, 1 F.Appx. 615, *2 (8th Cir. 2001) (citing *Cook v. Wausau Underwriters Ins. Co.*, 772 S.W.2d 614, 615-16 (Ark. 1989)); *State Farm Mut. Auto. Ins. Co. v. Cartmel*, 463 S.W.2d 648, 650 (Ark. 1971). The initial permission rule creates coverage under liability policies. *See Travis v. S. Farm Bureau Cas. Ins. Co.*, 378 S.W.3d 786, 787 (Ark. App. 2010). However, once coverage is created, the policy may contain language eliminating the coverage. *See Safeco Ins. Co. of Illinois v. S. Farm Bureau Cas. Ins. Co.*, 430 S.W.3d 815 (Ark. App. 2013) (holding policy exclusion can eliminate coverage). That is true in this case, as well. Even if Powell had permission from Britt sufficient to establish coverage under the initial permission rule, for the reasons set forth above the unlicensed driver exclusion would still apply.

PGAC does not have a duty to defend or pay damages arising out of the state court lawsuit. PGAC's motion for summary judgment will be granted, the Anderle Defendants' motion will be denied, and declaratory judgment will be entered in PGAC's favor.

**V.     Conclusion**

IT IS THEREFORE ORDERED that Plaintiff Permanent General Assurance Company's motion for summary judgment (Doc. 35) is GRANTED and Defendants Mina Anderle and C.A.'s motion for summary judgment is DENIED (Doc. 32).

IT IS FURTHER ORDERED that Plaintiff's pending motion for default judgment (Doc. 61) is GRANTED. A declaratory judgment will be entered accordingly.

IT IS SO ORDERED this 25th day of September, 2019.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE